## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARY ELLEN GREENLEE, | § | |
| | § | |
|     Plaintiff, | § | Civil Action |
| | § | No. C-06-123 |
| v. | § | |
| | § | |
| CHRISTUS SPOHN HEALTH SYSTEMS | § | |
| CORPORATION d/b/a CHRISTUS SPOHN | § | |
| HOSPITAL SOUTH, and LESLIE GEMBOL, | § | |
| INDIVIDUALLY, | § | |
| | § | |
|     Defendants. | § | |

### ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered the motion for summary judgment (D.E. 26) of Defendants Christus Spohn Health System Corporation, d/b/a Christus Spohn Hospital South (hereinafter "Christus Spohn" or "Spohn") and Leslie Gembol (together, "Defendants"). For the reasons set forth below, Defendants' motion for summary judgment is hereby DENIED.[1]

## I.  Jurisdiction

This Court has federal question jurisdiction over this action

---

[1]As set forth below, Plaintiff originally brought claims against Christus Spohn for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") and for retaliation in violation of the ADA.  (D.E. 1, 23).  Plaintiff has since voluntarily dismissed her ADA claims against Christus Spohn with prejudice.  (D.E. 33, 34).  Accordingly, this Order does not address Plaintiff's ADA claims.  This Order only addresses Plaintiff's claims against Christus Spohn and Leslie Gembol for violation of the Family Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"), and for retaliation in violation of the FMLA.  (D.E. 23).  Those are Plaintiff's only remaining claims against Defendants, and as set forth in this Order, this Court denies Defendants' motion for summary judgment on those claims.

pursuant to 28 U.S.C. § 1331.

## II.  **Procedural Background**

Plaintiff filed this action on March 16, 2006, alleging that Christus Spohn violated the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA").  (D.E. 1, Original Complaint). Plaintiff has since amended her Complaint several times, and the current operative Complaint is Plaintiff's Third Amended Complaint, filed on September 29, 2006.  (D.E. 23, Third Amended Complaint). In her Third Amended Complaint, Plaintiff brought claims against Christus Spohn for violation of the ADA and retaliation in violation of the ADA, and she brought claims against Christus Spohn and Leslie Gembol for violation of the Family Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA") and for retaliation in violation of the FMLA.  (Third Amended Complaint, ¶¶ 25-26).  Plaintiff has since moved to dismiss with prejudice her claims against Christus Spohn for violation of the ADA and for retaliation in violation of the ADA.  (D.E. 33).  On December 12, 2006, the Court granted Plaintiff's motion to dismiss her ADA claims against Christus Spohn.  (D.E. 34).  Accordingly, Plaintiff's only remaining claims in this action are against Christus Spohn and Leslie Gembol for violation of the FMLA and retaliation in violation of the FMLA.

Defendants Christus Spohn and Leslie Gembol filed their motion for summary judgment on November 8, 2006.  (D.E. 26).  Defendants argue that when Plaintiff's FMLA leave expired, Defendants did not

have to reinstate Plaintiff to her former position or place her in an equivalent position, because Plaintiff could not perform the essential functions of her job.  (Motion, pp. 17-22).  Leslie Gembol also argues that she cannot be held individually liable under the FMLA.  Defendants have offered evidence in support of their motion for summary judgment, including excerpts of the state and federal depositions of Plaintiff Mary Ellen Greenlee, excerpts of the state court deposition of Leslie Gembol, and an affidavit of Leslie Gembol.[2]  (See D.E. 26, attachments (DX-1 through DX-7)).[3]

Plaintiff filed her response brief on December 11, 2006. (D.E. 31, 36, 37, 38).  Plaintiff argues that when her FMLA leave expired, she was able to perform the essential functions of her job, and therefore Defendants had to reinstate her or place her into an equivalent position.  (Response, pp. 3-6).  Plaintiff also argues that Ms. Gembol is individually liable under the FMLA.  (Id. at p. 7).  Plaintiff has offered evidence in support of her response to Defendants' motion, including affidavits of Plaintiff,

---

[2]Plaintiff filed a lawsuit in state court, Mary Ellen Greenlee v. Christus Spohn Health System Corporation d/b/a/ Christus Spohn Hospital Corpus Christi-South, 347th Judicial District Court of Nueces County, Texas, Cause No. 05-793-H. Plaintiff alleges wrongful termination in violation of Texas Labor Code § 451.001 and discrimination in violation of Texas Labor Code § 21.051.  (DX-7, State Court First Amended Original Petition).  Per agreement between the parties, depositions taken in the state case may be used in the above-styled federal action before this Court.  (DX-1, Greenlee Fed. Dep., 4:20-25).

[3]The Court notes that on December 22, 2006, Defendants filed a reply in support of their summary judgment motion.  (D.E. 41).

Plaintiff's husband Dr. Mark Greenlee, Plaintiff's treating orthopaedic doctor Christopher Miskovsky, M.D., and Registered Nurse Marilyn Croxton, as well as e-mail communications between Ms. Gembol and various human resources employees of the Spohn System. (See D.E. 36, attachments (PX-A through PX-Z and PX-1 and PX-5)).

### III. **Factual Background**

The following facts are not in dispute: Plaintiff, a Registered Nurse, worked as a "Shift Coordinator" at Spohn South Hospital, primarily working the night shift. (PX-T, Greenlee Aff., ¶ 2; DX-4, Gembol Aff., ¶ 2). Plaintiff worked for Christus Spohn since 1990, and she worked as a Shift Coordinator from 1994 through her termination. (PX-T, Greenlee Aff, ¶ 2). On December 19, 2003, while at work at Spohn South, Plaintiff was injured by a patient. (Id. at ¶ 4; DX-3, Gembol St. Dep., 23:23-25). At the time of Plaintiff's injury, the patient had injured hospital security personnel, and the charge nurse had gone to obtain a controlled substance so as to subdue the patient. (PX-A, Greenlee St. Dep., 85:1-25; DX-1, Greenlee Fed. Dep., 23:1-24:25; PX-T, Greenlee Aff., ¶ 4). The patient injured Plaintiff by grabbing Plaintiff's left wrist/arm and rotating Plaintiff's body. (Id.).

As a result of the injury, Plaintiff was out of work on FMLA leave from December 19, 2003 until at least January 4, 2004.[4] (PX-

---

[4]There is some dispute as to Plaintiff's status between January 4, 2004 and January 9, 2004. Plaintiff maintains that she was released to work during those dates and that she

T, Greenlee Aff., ¶ 7; DX-2H, Leave of Absence Form; DX-3A, Return to Work Authorization).  From January 9 through January 20, 2004, Plaintiff returned to work, under a five-pound lifting restriction imposed by her doctor.  (PX-T, Greenlee Aff., ¶ 11; DX-2I, Return to Work Authorization; DX-3, Gembol St. Dep., 51:24-52:5).  On January 20, 2004, as a result of increasing pain in Plaintiff's injured left wrist and arm, Plaintiff once again went out on FMLA leave.  (DX-2J, Work Status Report; DX-2K, Letter re: FMLA).  On March 3, 2004, Plaintiff's doctor released her to return to work, subject to a two-pound lifting restriction on her left hand.[5]  (DX-1C, PX-I, Work Status Report).  Plaintiff's supervisor, Leslie Gembol, informed Plaintiff that she could not return to her Shift Coordinator position with the two-pound lifting restriction.  (PX-B, DX-2, Greenlee St. Dep., 105:22-24; 180:8-9; DX-3, Gembol St. Dep., 59:22-25, 61:3-20).

Plaintiff's FMLA leave expired as of March 25, 2004.  (DX-2L, PX-D, Letter from Christus Spohn to Plaintiff stating "Your FMLA

---

submitted all necessary paperwork, however, Leslie Gembol took Plaintiff off the schedule and would not permit her to work her regular shift.  (PX-B, Greenlee St. Dep., 134:17-137:24; PX-P, Greenlee Fed. Dep., 14:1-17:2; PX-T, Greenlee Aff., ¶¶ 8-10).  However, whether or not Plaintiff was on FMLA leave from January 5 to January 9, 2004 does not factor into this Court's analysis of whether Defendants are entitled to summary judgment on Plaintiff's FMLA claims.  For the purposes of the motion before the Court, what is relevant is that Plaintiff's FMLA leave expired in March, 2004, and when Plaintiff's FMLA leave expired, she was not reinstated or placed into an equivalent position.

[5]Plaintiff is right-hand dominant.  (DX-1, Greenlee Fed. Dep., 20-21).

expired on March 25, 2004"; DX-6, Mungia Aff., ¶ 2).  At that time, Plaintiff was still subject to the doctor imposed two-pound restriction.[6]  (DX-6, Mungia Aff., ¶ 2).  When Plaintiff's FMLA leave expired, Plaintiff was not placed back into her position as Shift Coordinator, nor was she placed into an equivalent position within the Christus Spohn Health System.  (Id. at ¶¶ 3-4).  Rather, Plaintiff was able to apply for other open positions within the Christus Spohn System.  (Id. at ¶ 4; PX-2, Greenlee St. Dep., 226:18-24; PX-X, Mark Greenlee Fed. Dep., 36:7-16; DX-5, Mungia St. Dep., 37:11-38:3).  In May, 2004, Plaintiff met with Christus Spohn human resources manager Maurine Mungia to discuss applications to other Spohn positions.  (DX-1, Greenlee Fed. Dep., 51:17-53:9, 98:5-11).  After meeting with Ms. Mungia, Plaintiff applied for a position as an RN case manager at Spohn Shoreline Hospital.  (Id).  Plaintiff was not selected for the case manager position.  (DX-6, Mungia Aff., ¶ 4).

When her FMLA leave expired in March, 2004, Plaintiff was placed by Christus Spohn on a 14 week extended medical leave.  (Id. at ¶ 3).  On July 12, 2004, Christus Spohn sent Plaintiff a letter stating that her employment had been terminated as of July 1, 2004.  (PX-D, DX-2M, Letter from Christus Spohn to Plaintiff).  Christus

---

[6]Plaintiff's two pound restriction was lifted on April 13, 2004.  (DX-2M, Work Status Report).  When the two-pound restriction was lifted, Plaintiff was no longer under FMLA leave, she was out on a Christus Spohn extended medical leave.  (DX-6, Mungia Aff., ¶ 3).

Spohn's reason for the termination was that Plaintiff's "LOA [Leave of Absence] expired."  (DX-3C, Associate Termination Information).

IV.  **Discussion**

    **A.**   **Summary Judgment Standard**

    Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; see also Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

    The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-1047 (5th Cir. 1996).  If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence

of evidence to support the nonmovant's case.  See Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."  First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).

When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Willis, 61 F.3d at 315.  Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party.  See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

B.   **Plaintiff's Claim for Violation of the FMLA**

1.   **Leave and Return from Leave**

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... [b]ecause of a serious health condition that makes the employee

unable to perform the functions of the position of such employee."
29 U.S.C. § 2612(a)(1)(D).  A "serious health condition," is
defined as an illness, injury, impairment or physical condition
that involves (1) inpatient care or (2) continuing treatment by a
health care provider."  29 C.F.R. § 825.114(a).

When an eligible employee returns from FMLA leave, that
employee is entitled "to be restored by the employer to the
position of employment held by the employee when the leave
commenced; or ... to be restored to an equivalent position with
equivalent employment benefits, pay, and other terms and conditions
of employment."  29 U.S.C. § 2614(a); see also 29 C.F.R. §
825.214(a) (when an employee returns from FMLA leave, the employee
"is entitled to be returned to the same position the employee held
when leave commenced, or to an equivalent position with equivalent
benefits, pay, and other terms and conditions of employment").[7]  An
employee returning from FMLA leave "is entitled to such
reinstatement even if the employee has been replaced or his or her
position has been restructured to accommodate the employee's
absence."  29 C.F.R. § 825.214(a).

---

[7]An "equivalent position" is defined by FMLA regulations as
a position that is "virtually identical to the employee's former
position in terms of pay, benefits, and working conditions,
including privileges, perquisites and status.  It must involve
the same or substantially similar duties and responsibilities,
which must entail substantially equivalent skill, effort,
responsibility, and authority."  29 C.F.R. § 825.215.

## 2.   __Essential Functions of Position__

Upon returning from FMLA leave (or upon expiration of FMLA leave), "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.214; see also Anderson v. New Orleans Jazz & Heritage Festival and Found., Inc., 2006 WL 3406739, *7 (E.D. La. 2006) ("Under the FMLA, an employee must be able to perform the essential functions of her position upon returning from FMLA leave."); Oatman v. Fuji Photo Film U.S.A., Inc., 54 Fed.Appx. 413 (5th Cir. 2002) ("If the employee is unable to perform an essential function of the position ... the employee has no right to restoration to another position under the FMLA."); Moss v. Formosa Plastics Corp., 99 F.Supp.2d 737, 744 (M.D. La. 2000) ("The plaintiff's serious medical condition prevented him from performing the essential functions of his job, and as a result, [the defendant employer] was not required to reinstate him at the end of his FMLA leave."); Voskuil v. Envtl. Health Center-Dallas, 1997 WL 527309, *9 (N.D. Tex. 1997) ("to be entitled to the same or an equivalent position upon return from leave, [the plaintiff] must adduce evidence that would permit a reasonable jury to find that she was capable of performing the essential functions of the position.").

### 3.  Factual Dispute as to Whether Plaintiff Could Perform Essential Functions

It is undisputed that Plaintiff's FMLA leave did not expire until March 25, 2004, and that on March 3, 2004, Plaintiff was released to return to work with a two-pound lifting restriction on her left hand.  (DX-2L, PX-D, Letter from Christus Spohn to Plaintiff; DX-1C, PX-I, Work Status Report).  It is also undisputed that when her FMLA leave expired (and Plaintiff was still subject to the two-pound restriction), Plaintiff was not reinstated into her former position as Shift Coordinator, nor was she placed into an equivalent position.  (DX-6, Mungia Aff., ¶¶ 3-4; PX-B, DX-2, Greenlee St. Dep., 105:22-24, 180:8-9; DX-3, Gembol St. Dep., 59:22-25, 61:3-20).

What is disputed, however, is whether Plaintiff could perform the essential functions of her job when she was released to work with the two-pound lifting restriction.  If Plaintiff could perform the essential functions of her Shift Coordinator position, the FMLA required Defendants to reinstate Plaintiff or to place her into an equivalent position.  See Oatman, 54 Fed.Appx. at 513; 29 U.S.C. § 2614(a)(1)(A).  Because Defendants did not reinstate Plaintiff or place her into an equivalent position, Defendants' FMLA liability turns on whether Plaintiff could perform the essential functions of

her job.[8]

Plaintiff and Defendants disagree as to whether Plaintiff was able to perform the essential functions of her Shift Coordinator position with a two-pound lifting restriction.  As set forth below, Plaintiff has submitted summary judgment evidence that creates a fact dispute as to whether Plaintiff could indeed perform the essential functions of her job.[9]

_____

[8]Defendants argue that they encouraged Plaintiff to apply for other jobs in the Spohn System, and that she was eligible for re-hire if she applied for other positions.  (DX-6, Mungia Aff., ¶ 4).  However, this is not what the FMLA requires.  If Plaintiff was able to perform the essential functions of her job when she was released in March, 2004, then Defendants had to reinstate her or place her in a equivalent position.  See 29 U.S.C. ¶ 2614(a).  This requirement under the FMLA is not satisfied by providing Plaintiff with the option to seek new employment within the Spohn System.  See id.; see also 29 C.F.R. § 825.214(a).

[9]The Court notes that Defendants have also submitted summary judgment evidence to support their position that Plaintiff could not perform the essential functions of her job with the two-pound restriction.  This evidence includes an affidavit of Leslie Gembol (DX-4), excerpts from the state court deposition of Leslie Gembol (DX-3), and a letter from Jason Jett to Unum Provident regarding Plaintiff's condition (DX-1A).  Specifically, Ms. Gembol states in her Affidavit that as Shift Coordinator, "Ms. Greenlee provided hands-on patient care ... including controlling unruly patients, and catching or supporting patients to prevent them from falling.  Ms. Greenlee's duties required the lifting and carrying of 1-15 pounds ... which often required Ms. Greenlee to hold the item with one hand while using the other to write or manipulate the item."  (DX-4, Gembol Aff., ¶ 2).  Further, Ms. Gembol states in her state court deposition that Plaintiff "could not perform essential job duties with a two-pound weight restriction."  (DX-3, Gembol State Dep., 61:18-20).  Finally, in the letter from Jason Jett to Unum Provident, Mr. Jett states that "Shift supervisors are often called to do various tasks in a day, including handle patients ... Knowledge alone does not a nurse or nurse supervisor make ... While Ms. Greenlee's position is administrative in part, it is also hands on".  (DX-1A, pp. 2-3).  As Plaintiff contends that she could perform the essential

First, Plaintiff submitted an affidavit of Marilyn Croxton, a Registered Nurse who worked at Spohn Hospitals from 1981 until her retirement in 2006. (PX-H, Croxton Aff., ¶ 2). Ms. Croxton was the Director of the New Born Nursery and on a rotating basis worked as a Shift Coordinator. (Id.). Ms. Croxton's affidavit states that "the functions of a Shift Coordinator are primarily administrative. It was never necessary for me to lift any objects that weighed more than two (2) pounds. A lifting limitation of two (2) pounds to either hand would not prevent me from carrying out the essential functions of a shift coordinator." (Id. at ¶ 3).[10]

Plaintiff also submitted her own Affidavit, where she states that "the duties of a Shift Coordinator are essentially administrative and it was not my duty to provide hands on care

_____

functions of her position and has submitted summary judgment evidence to support this allegation, there is a factual dispute that precludes summary judgment on this issue.

[10]Of note, Defendants' reply brief points to the period of time between January 10 and 20, 2004, when Plaintiff worked subject to a five pound lifting restriction. (Reply, pp. 4-5). Defendants argue that because Plaintiff suffered "extreme pain" in performing her job under a five-pound restriction, that Plaintiff would not be able to perform the essential functions of her position with a two-pound restriction. (Id. at p. 5). The Court finds this argument to be unpersuasive. Plaintiff's increasing pain in January, 2004 may have stemmed from Plaintiff's physical therapy, rather than as a result of performing her Shift Coordinator duties. Moreover, January, 2004 was closer to the injury than March, 2004, accordingly, Plaintiff may not have suffered from such pain when she was released to work in March, 2004. The Court finds that Plaintiff has created a fact dispute as to whether she could perform the essential functions of her position with a two-pound restriction, and her previous performance under a five-pound restriction is not enough to entitle Defendants to summary judgment.

including lifting objects or people.  In emergencies ... I was able to call upon nurses and orderlies whose essential duties did require lifting and moving patients or objects." (PX-T, Greenlee Aff., ¶ 2).  In her Affidavit, Plaintiff also notes that she has ten years experience as a Shift Coordinator within the Spohn System.[11]  (Id.).

Plaintiff also presented evidence that in the weeks after her injury first occurred, another nurse was assigned to fill in for Plaintiff as Shift Coordinator, and that nurse was under a greater physical restriction than Plaintiff's two-pound lifting limitation. (PX-T, Greenlee Aff., ¶¶ 7, 14, PX-B, Greenlee State Dep., 237:4-21).  In fact, this nurse who filled in for Plaintiff, Kelley Blankenship, was under a "no lifting" *at all* restriction at the time she filled in for Plaintiff as Shift Coordinator.  (Id.; PX-K, Return to Work Authorization).  Ms. Blankenship's return to work

---

[11]Of note, in her federal deposition, Plaintiff lists the following as the primary functions of her job as Shift Coordinator: to delegate, make bed assignments, communicate with physicians, report to administration, see that all the functions in the hospital are going smoothly, deal with staffing issues, keep up with the schedule for the oncoming shift to make sure they have enough nurses, communicate with management, and help nurses make decisions in emergency situations.  (PX-P, DX-1, Greenlee Fed. Dep., 19:8-20:10).  Plaintiff says that the parts of her job that involved direct contact with patients included communicating when there was a problem or complaint, responding to complaints, communicating with charge nurses, and making sure patients received the care they deserve.  (Id. at 20:13-23).  Plaintiff says that she was never assigned to one patient, because she had to look after the entire hospital.  (Id. at 21:18-22).

authorization lists the following restrictions: No lifting, bending, squatting, crawling, and no prolonged standing (*i.e.* greater than one hour). (Id.). Further, Ms. Blankenship was to limit walking until her condition improved. (Id.). Christus Spohn accepted Ms. Blankenship with those restrictions on December 12, 2003, shortly before Plaintiff sustained her injury on December 19, 2003.[12] (Id.).[13]

Next, Plaintiff has submitted evidence that Ms. Gembol made statements to Plaintiff to the effect that Plaintiff "could do her [Shift Coordinator] job with one hand", that a Shift Coordinator job is "considered light duty" and that Plaintiff could work with her injury, because "all [Plaintiff] d[id] [wa]s answer the phone and walk around." (PX-B, Greenlee State Dep., 147:2-3; PX-T,

---

[12]In their reply brief, Defendants argue that Plaintiff has not presented any evidence regarding Ms. Blankenship's physical abilities on the specific days she substituted for Plaintiff as Shift Coordinator. (Reply, p. 4). The Court does not find this argument to be persuasive. Plaintiff has submitted evidence that Ms. Blankenship substituted for Plaintiff as Shift Coordinator shortly after Plaintiff was injured. (PX-P; Greenlee St. Dep., 237:4-17; PX-T, Greenlee Aff., ¶ 7). Plaintiff has also submitted evidence that Ms. Blankenship was placed on a *no lifting* restriction one week before Plaintiff was injured. (PX-K, Return to Work Authorization). These two points, taken with the other evidence submitted by Plaintiff, are sufficient to create a factual dispute as to whether Plaintiff could perform the essential functions of her job with the two-pound restriction.

[13]Plaintiff also submitted evidence that a Shift Coordinator at Spohn Shoreline was permitted to work in his Shift Coordinator position with a fractured arm, where the fracture was to his right dominant arm. (PX-4, Mark Greenlee Aff., ¶ 9(b)).

Greenlee Aff., ¶ 5; PX-4, Mark Greenlee Aff., ¶ 5; PX-X, Mark Greenlee Fed. Dep., 16:1-22).  Plaintiff presented evidence that Ms. Gembol made these comments to Plaintiff by telephone, during the period between the date the injury took place (December 19, 2003) and January 5, 2004.  (Id.).

Plaintiff also submitted evidence that on February 28, 2006, while she was out on FMLA leave, she successfully completed her Advanced Cardiac Life Support ("ACLS") re-certification, which required the use of both hands to perform CPR on a dummy.  (PX-M, PX-N, PX-O, e-mails re: ACLS Re-certification; PX-T, Greenlee Aff., ¶ 12).  Plaintiff submitted evidence that Defendants, specifically Ms. Gembol, knew that Plaintiff successfully completed her ACLS re-certification on February 28, 2006, despite the injuries she had sustained to her left wrist.  (PX-O, e-mail from Leslie Gembol to Maurine Mungia and Regina Ybarra stating "I heard [Plaintiff] was here today taking ACLS and that she 'looked pretty good'.  I didn't see her – on purpose."); PX-T, Greenlee Aff., ¶ 12).

Finally, Plaintiff submitted an affidavit of her treating physician, Christopher Miskovsky, M.D., P.A.  (PX-1, Miskovsky Aff.).  Dr. Miskovsky states as follows:

> It is my understanding that the hospital would not permit Ms. Greenlee to resume her duties as a shift coordinator [on] March 3, 2004, because she was limited to lifting 2 pounds with her left hand.  As she is right hand dominant, it does not appear that this limitation would interfere with Ms. Greenlee performing the essential functions of the job as shift coordinator and house supervisor which is essentially administrative.

(Id. at p. 2).  Dr. Miskovsky also notes that he was informed that Plaintiff completed her CPR certification on February 28, 2004. Dr. Miskovsky states that given Plaintiff's successful completion of the CPR certification, "it certainly appears reasonable that Ms. Greenlee could have returned to work as a shift coordinator with her limited restrictions."  (Id. at p. 3).

Based on the above, the Court determines that Plaintiff has submitted evidence to create a fact dispute as to whether Plaintiff was able to perform the essential functions of her Shift Coordinator position with the two-pound lifting restriction. Accordingly, summary judgment is not appropriate on Plaintiff's first claim for violation of the FMLA.

C.    **Plaintiff's FMLA Retaliation Claim**

1.    **Prima Facie Case and Burden Shifting**

The FMLA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against an individual for opposing any practice made unlawful" by the FMLA.  29 U.S.C. § 2615(a)(2). This provision is enforceable under Section 107 of the FMLA, which imposes liability on "[a]ny employer who violates [29 U.S.C.] section 2615," and provides an individual right of action to sue in state or federal court.  29 U.S.C. §§ 2617(a)(1)-(2).

In order to establish a prima facie case of retaliation under the FMLA, a plaintiff "must show that: (1) she was protected under the FMLA; (2) she suffered an 'adverse employment action'; and (3)

either (a) she was treated less favorably than an employee who had not taken FMLA leave, or (b) the adverse decision was made because she took FMLA leave." <u>Mowbray v. American General Life Companies</u>, 162 Fed.Appx. 369, 374 (5th Cir. 2006); <u>see also</u> <u>Mauder v. Metropolitan Transit Authority of Harris County, Tex.</u>, 446 F.3d 574 (5th Cir. 2006) ("In order to establish a prima facie case of retaliation under the FMLA, the employee must show the following: 1) [s]he was protected under the FMLA; 2) [s]he suffered an adverse employment action; and 3) [s]he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because [s]he sought protection under the FMLA"); <u>Hunt v. Rapides Healthcare Sys., LLC</u>, 277 F.3d 757, 768 (5th Cir. 2001); <u>see also</u> 29 U.S.C. § 2614(a)(1).

"The Fifth Circuit applies the <u>McDonnell Douglas</u> framework to analyze retaliation claims under the FMLA." <u>Hunt</u>, 277 F.3d at 767 <u>see also</u> <u>Dutton v. Univ. Healthcare Sys., L.L.C.</u>, 136 Fed.Appx. 596, 599 (5th Cir. 2005).   Once the plaintiff has established a prima facie case of FMLA retaliation, the burden shifts to the defendant "to articulate a legitimate non-discriminatory or non-retaliatory reason for the employment action." <u>Id.</u> at 769.  Once the defendant has set forth such a reason, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's reason is a pretext for retaliation.[14]   <u>See</u> <u>id.</u>

---

[14]The Court notes that Plaintiff urges the application of the "mixed motive" framework, set forth in <u>Richardson v. Monitronics</u>

### 2. **Factual Dispute as to Whether Plaintiff Was Terminated Because She Exercised her FMLA Rights**

In this case, the Court finds that there is a factual issue as to whether Plaintiff has established a prima facie case of FMLA retaliation.  It is undisputed that Plaintiff was covered by the FMLA (both Plaintiff and Defendants concede that Plaintiff was on FMLA leave until at least March 25, 2004).  (DX-2L, PX-D, Letter from Christus Spohn to Plaintiff).  It is also undisputed that Plaintiff was discharged from her employment with Christus Spohn effective July 1, 2004.  (PX-D, DX-M, Letter re: Termination). Thus, Plaintiff meets the first two requirements for a prima facie

---

Int'l, Inc., 434 F.3d 327, 333 (5th Cir. 2005).  The Monitronics court stated that "[t]he mixed-motive framework applies to cases in which the employee concedes that discrimination was not the *sole* reason for her discharge, but argues that discrimination was *a* motivating factor in her termination." Id. at 333 (emphasis in original).  Pursuant to the mixed motive framework, once the plaintiff establishes a prima facie case of FMLA retaliation and the defendant sets forth a legitimate, non-discriminatory reason for the adverse employment action, the burden then shifts to the plaintiff to offer evidence to create a fact issue that either "(a) the employer's proffered reason is a pretext for discrimination,--or and herein lays the modifying distinction--(b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." Id.  The burden then shifts back to the employer, to "prove that it would have taken the same action despite the discriminatory animus." Id.  This Court notes that most Fifth Circuit cases apply the McDonnell-Douglas framework to cases of FMLA retaliation.  See, e.g., Hunt, 277 F.3d at 767; Dutton, 136 Fed.Appx. at 599.  Regardless, the outcome of this case is the same using the McDonnell-Douglas framework as well as the mixed motive framework.  As set forth below, Plaintiff has presented summary judgment evidence to create a fact issue as to whether the reason Defendants terminated Plaintiff was because she asserted her rights under the FMLA.

case of FMLA retaliation.  See Mowbray, 162 Fed.Appx. at 374 (a discharge is considered an ultimate employment decision, which satisfies the adverse employment action element of a prima facie case of retaliation.).  The issue lies with the third element of the prima facie case: whether Plaintiff was treated less favorably than an employee who had not requested FMLA leave, or whether Plaintiff was terminated because she sought protection under the FMLA.  See id.

Plaintiff presented the following summary judgment evidence to set forth a fact issue as to whether she was terminated because she took FMLA leave:[15]

Plaintiff submitted evidence that Ms. Gembol expressed anger with Plaintiff for taking FMLA leave: that Ms. Gembol accused Plaintiff of "milking it," told Plaintiff "I can't believe you are sitting at home doing nothing," that it was "convenient for

---

[15]This Court today does not make a decision on whether Plaintiff has definitively established her prima facie case for FMLA retaliation; rather this Court determines that there is a genuine issue of material fact as to whether Plaintiff has carried that burden.  However, even if this Court determined that Plaintiff did establish her prima facie case, with Defendants then asserting that they terminated Plaintiff for a legitimate, non-discriminatory reason (exhaustion of leave), *there would still be a fact issue as to whether Defendants' proffered reason was actually pretext for unlawful retaliation*.  As set forth below, Plaintiff has presented summary judgment evidence that creates a fact issue as to whether Defendants terminated Plaintiff because she exercised her FMLA rights.  Accordingly, even in the third stage of the McDonnell-Douglas burden shifting framework, there would still be a fact issue as to whether any legitimate, non-discriminatory reason offered by Defendants is actually a pretext for retaliation against the Plaintiff.

[Plaintiff] to get injured during the holidays", and "I know you can return to work," and said to another nurse in January, 2004, when Plaintiff was out due to her injury, that "[Ms.] Greenlee is supposed to have been hurt by a patient.  I don't believe she was hurt.  This is just another excuse to be absent." (PX-T, Greenlee Aff., ¶¶ 5, 11, 22; PX-H, Croxton Aff., ¶ 4(a); PX-4, Mark Greenlee Aff., ¶ 12; PX-B, Greenlee St. Dep. 145:2-3).[16]  Further, Plaintiff submitted evidence that Ms. Gembol said that Plaintiff's treating orthopaedic doctor was an "idiot", that he "does not know what he is doing," and that his diagnosis of Plaintiff was "a lot of crap." (PX-T, Greenlee Aff., ¶¶ 10-11, 22, PX-5, Conversation Log; PX-X, Mark Greenlee Fed. Dep., 26:5-6).  Moreover, Plaintiff submitted evidence that Defendants planned to terminate her even while she was out on doctor-approved FMLA leave: that in January/February, 2004, Ms. Gembol "emphatic[ally] said Plaintiff was "not coming

---

[16]Plaintiff also submitted several e-mails written by Ms. Gembol, which support Plaintiff's claim that Ms. Gembol was hostile to Plaintiff's exercise of her FMLA rights.  For example, Ms. Gembol wrote the following e-mail regarding Plaintiff's intention to take ACLS training at Spohn South in February, 2004: "Regina, not that it matters much since **she's been out so long with a minor injury** ... but She's taking ACLS this weekend here." (PX-2, e-mails between Leslie Gembol and Spohn human resources employees)  (emphasis added).  Ms. Gembol also wrote the following e-mail in February, 2004, regarding Plaintiff's potential return to work: "I <u>did not</u> remind her that she could not come back until she saw the Concentra doctor and was released from the OHN. [However,] I will not let her come back until that happens."  <u>Id.</u> (emphasis in original).

back".[17]   (PX-H, Croxton Aff., ¶ 4(c)).   Plaintiff also submitted

an e-mail stating that Ms. Gembol processed termination papers for

Plaintiff "back when [Plaintiff] had exhausted 12 weeks" of FMLA

leave, but that paperwork was disregarded "because it was not time

to term (sic) her **yet**."   (PX-2, e-mails between Leslie Gembol and

Spohn human resources employees) (emphasis added).[18]   Finally, Ms.

Greenlee submitted her performance reviews from 1995 through her

termination, and there is a marked decline in Plaintiff's reviews

after she went out on approved FMLA leave.   (PX-Q, Performance

Reviews; PX-T, Greenlee Aff., ¶ 4 ("My evaluations have always been

excellent to superior, until Leslie Gembol evaluated me while I was

on FMLA leave.   She rated me "Fair" for attendance[,] although all

of the time I was absent during this evaluation period was FMLA

leave approved by Gembol and Spohn.")).

---

[17]The Court notes that Plaintiff submitted evidence that Heather Pate replaced Plaintiff as Shift Coordinator while Plaintiff was still on FMLA leave.  (PX-F, Transfer Request Form).  However, the Court does not find this evidence to be outcome determinative.  If Plaintiff had been able to perform the essential functions of her job, Defendants would not have run afoul of the FMLA is they placed Plaintiff in an "equivalent position" when she returned from FMLA leave.  29 U.S.C. § 2614(a).  The FMLA does not require that Plaintiff must have been reinstated into her own particular Shift Coordinator position.

[18]"When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination."  Mauder, 446 F.3d at 583.  In this case, Plaintiff submitted evidence that the decision to terminate her employment took place during the time she was out on FMLA leave, or immediately upon the conclusion of her 12 week leave period.  (PX-H, Croxton Aff., ¶ 4; PX-2, Gembol e-mails).

Based on the above, the Court concludes that Plaintiff has created a genuine issue of material fact as to whether Defendants terminated Plaintiff because she asserted her rights pursuant to the FMLA.[19]  Accordingly, summary judgment is not appropriate on Plaintiff's claim for FMLA retaliation.

D.    **Individual FMLA Liability of Ms. Gembol**

1.    **Individual Liability Under the FMLA**

In certain circumstances, individuals can be held liable under the FMLA.  The FMLA definition of a covered "employer" includes "any person who acts directly or indirectly in the interest of an employer to any of the employer's employees ... individuals ***such as*** corporate officers 'acting in the interest of an employer' are individually liable for violations of the requirements of the FMLA."  29 C.F.R. § 825.104(d) (emphasis added); 29 U.S.C. § 2611(4)(A).[20]  Moreover, numerous courts, including courts within the Fifth Circuit, have held that individuals can be held liable

---

[19]As noted above, this fact dispute pertains to whether Plaintiff has established the third element of her prima facie case.  However, the Court determines that even assuming for the sake of argument that Plaintiff did definitively establish her prima facie case *and* that Defendants then articulated a legitimate, non-discriminatory reason for Plaintiff's termination--there would still be a fact dispute as to whether the real reason Defendants terminated Plaintiff was in retaliation for Plaintiff's exercise of her FMLA rights.

[20]The FMLA's definition of "employer" is materially identical to the definition of "employer" in the Fair Labor Standards Act, 29 U.S.C. § 203(d). See Modica v. Taylor, 465 F.3d 174, 186 (5th Cir. 2006).

under the FMLA.   See, e.g., Oby v. Baton Rouge Marriott, 329
F.Supp.2d 772, 788 (M.D. La. 2004). ("[M]ost courts that have
decided the issue have determined that supervisors can be held
individually liable for FMLA violations.); Cantley v. Simmons, 179
F.Supp.2d 654, 655-58 (S.D. W.Va. 2002) ("individual liability is
permitted under the FMLA."); Meara v. Bennett, 27 F.Supp.2d 288,
291 (D. Mass. 1998) (noting that the definition of employer under
the FMLA "suggests that individuals are contemplated as
defendants"); Longstreth v. Copple, 101 F.Supp.2d 776 (N.D. Iowa
2000).

     An individual does not necessarily have to be a corporate
officer or otherwise have a corporate role to be held individually
liable under the FMLA.   Rather, the individual has to have
"sufficient responsibility or stature within [the defendant
employer] to warrant the imposition of personal liability under the
FMLA." Williamson v. Deluxe Fin. Servs., Inc., 2005 WL 1593603, *9
(D. Kan. 2005); see also Oby, 329 F.Supp.2d at 788 ("the test for
[individual FMLA] liability is whether the defendant had the
ability to control, in whole or in part, whether the plaintiff
could take a leave of absence and return to the position."); Brown
v. CBK, 2005 WL 3263873, *2 (W.D. Tenn. 2005) ("the FMLA has been
interpreted to impose individual liability on employees of covered
private sector employers if the employee exercises an adequate
amount of control over the plaintiff's ability to exercise his or

her FMLA rights"); <u>Bryant v. Delbar Prods., Inc.</u>, 18 F.Supp.2d 799, 807 (M.D. Tenn. 1998) (finding individual liable under the FMLA because he "had all the personnel responsibilities at the plant", and he participated in the decision to terminate the plaintiff employee); <u>Brunelle v. Cytec Plastics, Inc.</u>, 225 F.Supp.2d 67, 81 (D. Me. 2002) (holding that "a front-line supervisor--at the bottom of four rungs of management ... simply was not a *prominent enough player in [the defendant employer's] operations* to be considered an 'employer' for purposes of the FMLA) (emphasis added); <u>Cantrell v. Bauhaus, U.S.C., Inc.</u>, 2001 WL 1524410, *2 (N.D. Miss. 2001) (holding that a plant manager was not individually liable under the FMLA, because the plant manager was not the one who made the decision to terminate the plaintiff).

## 2.  **Fact Issue as to Ms. Gembol's Individual Liability**

In this case, the Court finds that there is a fact issue as to whether Ms. Gembol can be held individually liable as an employer under the FMLA.

It is undisputed that during the relevant time period, Ms. Gembol served as Associate Administrator of the Spohn South Hospital.[21] (Gembol Dep., 7:22-8:23). In this capacity, Ms. Gembol was effectively 'second in command' of the Hospital, the only

---

[21] Ms. Gembol now serves as the Executive Director of Women and Children Services at Spohn South.  She has held this position since July 1, 2006.  (Gembol Dep., 7:22-8:23).

person above her was Administrator Mike Johnson.[22]  (Gembol Dep. 19:1-7).  As Associate Administrator, Ms. Gembol was "[r]esponsible for overseeing [the] clinical and nursing practice for the Spohn South location."  (PX-S, Gembol Fed. Dep., 9:4-5).  Ms. Gembol responded in the affirmative when asked if she "[had] anything to do with the ... termination of people that worked at Spohn South." (PX-C, Gembol St. Dep., 35:18-21).

Plaintiff has submitted summary judgment evidence to create a fact dispute as to whether it was Ms. Gembol (alone) who made the decision that Plaintiff could not return to work as a Shift Coordinator with the two-pound lifting restriction, and also as to whether it was Ms. Gembol who made the decision to terminate Plaintiff's employment.  (PX-T, Greenlee Aff., ¶¶ 14-15, 19, 23 (noting that it was Ms. Gembol who "would not accept [Plaintiff] with her [two-pound] limitation"), PX-S, Gembol Fed. Dep. 24:19-26:20 (Ms. Gembol was the one who told Plaintiff she could not return with a two-pound restriction); PX-4, Mark Greenlee Aff., ¶ 13, 16 (stating that "Mrs. Gembol informed [the Occupational Health Nurse] that [Ms. Gembol] would not accept [Plaintiff] with those two pound restrictions. ... [and that it was] (Mrs. Gembol) [who would] not sign the release form."); PX-3, Series of e-mails from Leslie Gembol to Spohn human resources employees (noting that it

---

[22]While she was Associate Administrator of the Hospital, Ms. Gembol was responsible for "responsible for overseeing nursing and clinical practice for the Spohn South location."  (Gembol Dep., 9:1-2).

was Ms. Gembol who processed Plaintiff's termination paperwork on three separate occasions and followed up to make sure the termination was complete); PX-R, Associate Terminal Information, signed by Ms. Gembol.[23]

Based on the above, the Court determines that a reasonable juror could find that Ms. Gembol is subject to individual FMLA liability, given Ms. Gembol's position as Associate Administrator of the hospital, as well as Ms. Gembol's possible role with respect to Plaintiff's termination. See Williamson, 2005 WL 1593603 at *9; Oby, 329 F.Supp.2d at 788.  Accordingly, summary judgment is not appropriate on the issue of whether Ms. Gembol can be held individually liable on Plaintiff's FMLA claims.

## V.   Conclusion

For the reasons set forth above, this Court hereby DENIES Defendants' Motion for Summary Judgment.  (D.E. 26).

SIGNED and ENTERED this 4th day of January, 2007.

_____
Janis Graham Jack
United States District Judge

---

[23]In contrast, Defendants have submitted excerpts of Ms. Gembol's state court deposition stating that Ms. Gembol and Occupational Health Nurse Karen Vetters jointly decided that Plaintiff could not resume her duties as Shift Coordinator with the two-pound lifting limit (DX-3, Gembol State Dep., 115:7-9), and that it was not Ms. Gembol who made the decision to terminate Plaintiff's employment (Id. at 44:12) (See also DX-4, Gembol Aff., ¶ 4).